AMICUCCI v. FORD MOTOR CO.

1. STATUTES—CONSTRUCTION—LANGUAGE IDENTICAL WITH PREVI-
OUSLY EXISTING STATUTE IN ANOTHER JURISDICTION.
    Language used in a statute which is identical with that of a
    statute previously in force in another jurisdiction is presumed
    to have been adopted with the meaning given it there.

2. WORKMEN'S COMPENSATION—CONSTRUCTION OF STATUTES—ARIS-
ING OUT OF AND IN THE COURSE OF EMPLOYMENT.
    The phrase "arising out of and in the course of his employ-
    ment" having been adopted in identical words from the Eng-
    lish workmen's compensation act is presumed to have the
    meaning previously given it there (2 Comp. Laws 1929,
    § 8417).

3. SAME—SERVANT'S ACTS OF MINISTRATION TO SELF.
    Acts of ministration by a servant to himself, performance of
    which while at work are reasonably necessary to his health
    and comfort, are incident to his employment and are acts
    of service therein within the workmen's compensation act
    though only indirectly conducive to the purpose of the em-
    ployment, consequently no break in the employment is caused
    by the mere fact he is ministering to his personal comforts or
    necessities.

4. Same—Construction of Statutes.

Though the workmen's compensation law is not a cover-all insurance, it should be construed so as to provide indemnity for accidents peculiarly incidental to employment.

5. Same—Arising Out of and in Course of Employment.

The question of whether an accident arose "out of and in the course of" the employment depends ultimately upon the facts and circumstances of each case (2 Comp. Laws 1929, § 8417).

6. Same—Out of Employment.

To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed and must be one which follows as a natural incident to the employment, be connected with it and not be the result of a risk disassociated therefrom (2 Comp. Laws 1929, § 8417).

7. Same—Personal Cleanliness of Employee—Use of Air Hose for Dusting after Grinding Operation.

Evidence supported finding of department of labor and industry that injury to employee which resulted from use of air hose in removing dust from work bench and clothing after finishing work on aluminum stock with an air-driven emery grinder, which injury necessitated a colostomy and four months' hospitalization, arose out of and in the course of employment and was not due to horseplay, it being foreseeable that, as a natural human desire, some attempt, incidental to the employment, would be made for personal cleanliness by employee (2 Comp. Laws 1929, § 8417).

Appeal from Department of Labor and Industry. Submitted January 5, 1944. (Docket No. 25, Calendar No. 42,561.) Decided February 24, 1944.

Baldoino Amicucci presented his claim against Ford Motor Company, employer, for compensation for injuries sustained while in its employ. Award to plaintiff. Defendant appeals. Affirmed.

*Frank R. Picone* (*Valois Crossley,* of counsel), for plaintiff.

*Doelle, Starkey & Jones,* for defendant.

Bushnell, J.    Plaintiff Baldoino Amicucci and another employee, Harvey Flowers, worked for defendant Ford Motor Company at the same bench, burring, filing and grinding aluminum stock. Each man used an air-driven emery grinder which resulted in the accumulation of considerable dust on the work bench and their clothing.

On the day in question, Flowers, having completed his particular job, removed the air hose from his grinder and, in the words of the department of labor and industry—"as was customary among the employees, used the hose to blow the dust off the bench and off his clothes. Some of the dust was blown on the plaintiff."

Flowers testified that, after blowing off his bench and his own clothes, he blew the air from the hose across the shoulders of plaintiff and then brought the hose down along the center of plaintiff's back to a position of about one foot below his rectum, and then brought the hose, which carried an air pressure of about 250 lbs., up the center of plaintiff's back. Plaintiff gave an exclamation of pain, and fell. He was taken to the first-aid department and from there sent to the hospital. Upon his admission to the hospital the examining physician found that plaintiff's abdomen was blown up to about twice its normal circumference, and a diagnosis of perforation of the intestines due to compressed air was made. An emergency operation was immediately performed by opening the peritoneal cavity, expelling the air and suturing the perforations. Because of plaintiff's condition a colostomy was necessary and he remained in the hospital over four months. At the time of the hearing, about 8 months after the accident, the colostomy was still open.

The department found that there was no direct testimony which would give credence to any claimed

horseplay. There were apparently no eyewitnesses to the occurrence and both plaintiff and Flowers positively denied there was any horseplay. Both testified that it was a customary and common practice to use the hose to clean off the work bench and each other's clothes.

The department held that plaintiff's injury and subsequent disability did not result from horseplay or from any act outside the scope of his employment or from a violation of a company rule, and that the disability was caused by an accident arising out of and in the course of plaintiff's employment.

Defendant obtained leave to appeal from an award granting plaintiff compensation of $18 per week for total disability from August 19, 1942, to February 24, 1943, and medical fees in the sum of $1,395.59.

The phrase, "arising out of and in the course of his employment" (2 Comp. Laws 1929, § 8417 [Stat. Ann. §17.151]) was adopted in identical words from the English workmen's compensation act, "and presumably with the meaning previously given it there." *Hopkins* v. *Michigan Sugar Co.*, 184 Mich. 87, 90 (L. R. A. 1916 A, 310). Its meaning was fully discussed in the *Hopkins* and subsequent cases, and in *Haller* v. *City of Lansing*, 195 Mich. 753 (L. R. A. 1917 E, 324), a number of applicable English authorities are reviewed. In the *Haller Case* the court said, p. 759:

"The general rule as to injuries during intermissions from labor, especially where the accident occurs on the employer's premises, is formulated from the decisions as follows in 1 Honnold on Workmen's Compensation, p. 381.

" 'Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance

of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure a drink, refreshments, food, or fresh air, or to rest in the shade.' (citing numerous sustaining cases).''

The courts of Illinois, California, Minnesota and New Jersey have applied the reasoning used in the *Haller Case,* under somewhat similar circumstances. See *Steel Sales Corporation* v. *Industrial Commission,* 293 Ill. 435 (127 N. E. 698, 14 A. L. R. 274); *Whiting-Mead Commercial Co.* v. *Industrial Accident Commission,* 178 Cal. 505 (173 Pac. 1105, 5 A. L. R. 1518); *Elliott* v. *Industrial Accident Commission,* 21 Cal. (2d) 281 (131 Pac. [2d] 521, 144 A. L. R. 358); *McKenzie* v. *Railway Express Agency, Inc.,* 205 Minn. 231 (285 N. W. 529); *Taylor* v. *110 S. Penna Ave. Corp.,* 117 N. J. Law, 346 (188 Atl. 689); and *Terlecki* v. *Strauss,* 85 N. J. Law, 454 (89 Atl. 1023).

Though the compensation law is not a cover-all insurance, it should, nevertheless, be construed so as to provide indemnity for accidents peculiarly incidental to employment, *Simpson* v. *Lee & Cady,* 294 Mich. 460, and the question of whether the accident arose ''out of and in the course of'' the employment depends ultimately upon the facts and circumstances of each case, *Wilhelm* v. *Angell, Wilhelm & Shreve,* 252 Mich. 648, and *Appleford* v. *Kimmel,* 297 Mich. 8.

It seems clear that the injury in the instant case arose ''in the course of'' the employment. The debatable question is whether the injury arose ''out of'' the employment.

The court said in *Meehan* v. *Marion Manor Apts.,* 305 Mich. 262:

"To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed;, it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom."

See *Appleford* v. *Kimmel, supra; Dent* v. *Ford Motor Co.,* 275 Mich. 39; *Rucker* v. *Michigan Smelting & Refining Co.,* 300 Mich. 668.

There was a causal connection between the conditions under which plaintiff worked and the resulting injury. The filing, burring and grinding of metal parts will bring about an accumulation of dust. It is foreseeable that, as a natural human desire, some attempt at cleanliness will be made, and such attempt is incidental to the employment. As said by the Illinois court in the *Steel Sales Corporation Case, supra:*

"An employee, while at work for his employer, may do those things which are necessary to his own health and comfort, even though they are personal to himself, and such acts will be considered incidental to his employment."

And as stated by the California court in the *Whiting Case, supra:*

" 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts con-

tribute to the furtherance of his work.    *   *   *
That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents.    Such dangers as attend them, therefore, are incidental dangers.    At the same time injuries occasioned by them are accidents resulting from the employment.' "

We may not go behind the findings of fact of the department that the accident did not arise "out of" horseplay, there being testimony to support such finding.    We are bound by the rule of the *Haller Case,* that the "injury to an employee may arise out of and in the course of his employment, although he is not directly engaged in the work of his employment at the time."

There is evidence to sustain the conclusion of the department that plaintiff received a personal injury which arose "out of and in the course of his employment."

The award is affirmed, with costs to appellee.

NORTH, C. J., and STARR, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.