CRAWFORD *v.* SCHOOL DISTRICT NO. 6.

SAME *v.* SCHOOL DISTRICT NO. 16.

1. STATUTES—CONSTRUCTION—INTENT.

The court does not consider a statute as though divorced and removed from cognate legislation, where the language being considered demands construction in order to determine the legislative intent.

2. SAME—LEGISLATIVE POLICY—ELECTIONS.

It is assumed that legislative policy will follow a consistent policy and pattern with respect to the weight and deference given the vote of the citizenry on considerations directly affecting their homes and schools.

3. SAME—CONSTRUCTION—INTENT—OTHER STATUTES.

The intent of the legislature, in construing a statute, is to be drawn from an examination of the language itself, the subject matter under consideration, the scope and purpose of the act and other statutes which may have preceded it or which relate to the same subject and it should be so construed that all of its provisions may be rendered harmonious.

4. MUNICIPAL CORPORATIONS—ANNEXATION—ELECTIONS.

The determination of the persons in the area being annexed to a city as to their corporate affiliation is not to be overpowered by the wishes of those who remain in the area from which detachment was had.

5. STATUTES—WISDOM OF LEGISLATION—COURTS.

The wisdom of legislation is for the legislature and is not within the province of the court.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 50 Am Jur, Statutes § 223 *et seq.*
[2] 37 Am Jur, Municipal Corporations § 30.
[4] 37 Am Jur, Municipal Corporations §§ 29, 30.
[5] 50 Am Jur, Statutes § 380.
[6, 7] 37 Am Jur, Municipal Corporations §§ 23–34.
[8] See, generally, 14 Am Jur, Costs § 29 *et seq.*; § 91.

6. SCHOOLS AND SCHOOL DISTRICTS—ANNEXATION TO THIRD CLASS DISTRICT—ELECTIONS.

"Annexation election in school district or districts in the territory to be annexed" approving annexation of territory taken therefrom to city forming the whole or part of a school district of the third class, refers to a school district election at which qualified school district electors may participate by voting therein, but where the territory annexed contains no voters, the adverse vote of electors in the territory of the district not annexed is ineffective to nullify annexation proceedings which have complied with statute, notwithstanding statute contains no specific provision relative to unpopulated areas (CLS 1954, § 346.4).

7. SAME—ANNEXATION—ELECTIONS.

An election in school district from which territory was annexed by school district of the third class is not ordered, where at time of annexation there was but one voter resident in the annexed territory, he has since moved therefrom and no effort was made to establish his vote, or whether or not he had voted, and election held was invalid because electors in territory of the district not annexed had been permitted to vote (CLS 1954, § 346.4).

8. COSTS—PUBLIC QUESTION—ANNEXATION TO SCHOOL DISTRICT.

No costs are allowed in quo warranto proceedings to test validity of annexation of territory to third class school district, a public question being involved (CLS 1954, § 346.4).

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted April 12, 1955. (Docket Nos. 56, 57, Calendar Nos. 46,464, 46,465.) Decided June 6, 1955.

Quo warranto by C. Carroll Crawford and School District of the City of Kalamazoo, a municipal corporation, against School District No. 6, Fractional, Kalamazoo and Portage Townships, Kalamazoo County, Michigan, a municipal corporation, to determine validity of annexation and to challenge election results in townships. Similar action by plaintiffs against School District No. 16, Kalamazoo Township, Kalamazoo County, Michigan, a munici-

pal corporation. Cases consolidated for trial and appeal. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Frost, Ford & Kriekard* (*Henry Ford, Jr.,* of counsel), for plaintiffs.

*Sharpe, Stapleton, Huff & Adams* (*H. J. Stapleton,* of counsel), for defendants.

SMITH, J. This case involves the validity of certain school district annexation elections. The primary area involved is described by the parties, and will be referred to by this Court, as the "panhandle." This is an area adjacent to the city of Kalamazoo, the validity of the annexation of which was established in *Kalamazoo Township* v. *Kalamazoo County Clerk,* 339 Mich 619. The instant litigation involves another phase of the annexation.

A portion of the panhandle lies in defendant School District No. 6, Fractional, Kalamazoo and Portage Townships, Kalamazoo County, and the remaining portion lies in defendant School District No. 16, Kalamazoo Township, Kalamazoo County. Subsequent to the effective date of the panhandle's annexation, the Board of Education of the School District of the City of Kalamazoo (hereinafter termed plaintiff school district) resolved "that (the panhandle) shall be and the same is hereby annexed to and consolidated with the School District of the City of Kalamazoo." School Districts Nos. 6 and 16 were notified thereof and annexation elections were thereafter held. The electors of School District No. 16 voted against the annexation of the panhandle with the plaintiff school district by a vote of 392 to 8. School District No. 6 likewise rejected by a vote of 1293 to 10. Plaintiffs, the School District of the City of Kalamazoo, and C. Carroll Craw-

ford, a resident of the city of Kalamazoo, thereupon commenced quo warranto suits against each defendant school district, challenging the validity of the elections. The trial court held that the elections were null and void, that the panhandle was duly annexed to the plaintiff school district, and judgment was entered accordingly. The causes were consolidated for trial, and appeal, and will be referred to in this opinion, save where distinction must be made, as though one action.

The applicable statute (CLS 1954, § 346.4 [Stat Ann 1953 Rev § 15.184]), in its controverted portion reads as follows:

"Whenever hereafter any territory shall be annexed to any city forming the whole or a part of a school district of the third class, the territory so annexed shall become a part of the contiguous school district embracing the whole or some part of said city: Provided, That a resolution approving such consolidation shall be passed by the board of education of said third class school district within 30 days after the territory is annexed: And provided, That there is an affirmative vote in an annexation election in the school district or districts in the territory to be annexed approving such consolidation. The board or boards of education having authority in such school district or districts shall call such annexation elections within 30 days after the territory in question has been annexed to the city."

We will state the position of the parties only so far as is necessary to dispose of the matter on appeal. It is the position of the plaintiffs-appellees, challenged by defendants, that the elections were null and void because, as is conceded, all of the qualified electors of each school district were allowed to vote, rather than only those residing in the panhandle itself. As appellees put it, there was error "in per-

mitting electors who resided outside the territory to be annexed to vote on the annexation question."

The question presented is one of statutory construction. What, precisely, is the meaning of the proviso that there shall be an affirmative vote in the school districts in the territory to be annexed? The language, it is conceded, lacks the utmost in clarity. If we, with appellants, place the emphasis upon the words "school district" there is much to be said for the proposition that all in the entire school district should vote. Is this, in fact, the legislative intent?

In the determination of the legislative intent, where the language itself demands construction, we do not consider the statute as though divorced and removed from cognate legislation. It is a reasonable assumption that legislative policy with respect to the weight and deference given the vote of the citizenry on considerations directly affecting their homes and schools, always in the forefront in annexations, will follow a consistent policy and pattern. As we put the matter in *In re School District No. 6, Paris and Wyoming Townships, Kent County,* 284 Mich 132, 143, 144:

"In determining the meaning of this statute, it is the primary duty of the court to ascertain, if possible, the intention of the legislature in passing it. That intention is to be drawn from an examination of the language of the act itself, the subject matter under consideration, and the scope and purpose of the act. It is necessary to consider other statutes which may have preceded it or which relate to the same subject. The act should be so construed that all of its provisions may be rendered harmonious and recourse may be had to the history of the legislation upon the subject matter of the act."

We turn, then, to acts similar in scope and purpose. Thus with respect to the alteration and consolidation of school districts (CL 1948, § 353.1 [Stat

Ann 1953 Rev § 15.407]), we find that where land in a school district has been taxed for the building of a schoolhouse, it cannot be "set off into another district" without a 2/3 vote of certain people. These people are the owners of the land "to be sent into" the other district. Likewise with respect to annexation of land by a city having a population of 15,000 or less (CLS 1952, § 117.9 [Stat Ann 1953 Cum Supp § 5.2088]), it is provided that a majority of the electors from "that portion of the territory to be attached" shall vote in favor of the annexation. To safeguard effectively the rights of those in the area, it is further provided that there shall be 2 elections, and a majority of the votes cast in the district to be annexed, "voting separately," must favor the proposed change. Similar in purpose is the provision in the same section of the act that when it is proposed to incorporate territory as a city "only the residents of the territory to be incorporated shall vote on the question of incorporation." Such examples might be extended. As to change of boundaries of fourth class cities, see CL 1948, § 82.1 (Stat Ann 1949 Rev § 5.1609), "a majority vote of the duly qualified electors of the territory proposed to be added * * * voting at a special election;" as to incorporation of villages, CL 1948, § 78.5 (Stat Ann § 5.1515) "a majority of the votes cast in the district proposed to be incorporated or annexed, voting separately, to be in favor," et cetera.

There is a clearly discernible pattern here disclosed, a consistent thread of policy running through these various acts, that the persons in the area affected shall determine their corporate affiliation and that in this determination they shall not be overpowered by the wishes of those who remain in the area affected. The words of Mr. Justice BOYLES, in *Presque Isle Prosecuting Attorney* v. *Township of*

*Rogers,* 313 Mich 1, 5, 6, are peculiarly appropriate at this point:

"It may be admitted that the voters and taxpayers in the remaining part of the township have an interest in seeing that a part of the township property is not removed from the township tax rolls, but the legislature has seen fit to declare that the residents in the remaining part of the township cannot defeat the will of the residents in that part who desire that their territory be made a part of the newly incorporated city. As we have often repeated, the wisdom of legislation is for the legislature, and not within the province of the court."

Approached from this viewpoint, as we think the problem must be, the question of emphasis in the statute to which we heretofore adverted, answers itself: the vote required is a vote of the electors "in the territory to be annexed." The words referring to the school district or districts relate to the type of election held, *i.e.*, as was correctly held by the trial court, "a school district election at which qualified school district electors may participate by voting therein." To the appellants' argument that this case is controlled by *Heinze v. St. Joseph Township School District No. 1,* 336 Mich 552, we point out that the question here decided was neither presented to us nor decided therein.

There is, however, a further determination to be made. It not infrequently happens in respect of annexations that the territory to be annexed is completely without electors and thus "in the territory to be annexed" there is nobody able to express its will with respect thereto. Statutes may provide for the contingency by providing alternatives to the usual election, and, if so, there is no problem. We find such provisos in CL 1948, § 82.1 (Stat Ann 1949 Rev § 5.1609), CL 1948, § 78.5 (Stat Ann § 5.1515), and CLS 1952, § 117.9 (Stat Ann 1953 Cum Supp § 5.-

2088).  It is to be noted, with respect to such provisos, that the legislative intent, again clearly expressed, is that absence of qualified electors shall not defeat an annexation deemed desirable or necessary by an adjacent community, and thus stifle its growth or expansion.

The statute in question is silent on the point and in that part of School District No. 6 in the panhandle there were no qualified electors.  There can, hence, be no election in the territory to be annexed. It is an impossibility.  Does this mean that the action desired by the plaintiff school district must fail? We cannot so hold.  The reasoning of the court in *Braddock Township Appeal*, 148 Pa Super 52 (24 A2d 705) well expresses what seems to be the legislative intendment.

"The provision in the act providing for the signatures of 80 per centum of the qualified electors resident in the territory desired to be detached and annexed was manifestly made for the protection of the resident electors, if any, in the territory in order that annexation could not be made without the approval of a substantial majority.  We find no implication in the act that there can be no annexation where there are no electors resident in the territory proposed for annexation.  We agree with the court below that the provision for the assent of a certain percentage of the qualified electors resident in the territory desired to be detached and annexed was for the purpose of making it clear that those who were electors resident in the district affected were satisfied with the proposed change, and that where, as in the present case, there were no electors this provision of the act does not affect the validity of the petition.  Appellant's contention that since there are no qualified electors resident in the territory there can be no annexation is, in our judgment, devoid of merit."

So far, then, as respects School District No. 6, no election is possible and the act will not be thwarted by such impossibility. Such portion of such school district, therefore, within the panhandle, became annexed to the plaintiff school district upon the adoption of the resolution of the board of education thereof and the fulfillment of the necessary statutory requirements.

With respect to School District No. 16, the situation is somewhat different. The trial of the suits filed had been delayed by consent of the parties until after this Court had passed upon the validity of the annexation of the panhandle. At the trial the court correctly held that the election held was invalid and illegal. Should a new election be ordered? The testimony disclosed that, at the time of the trial, the same situation obtained with respect to this school district as with School District No. 6, namely, that there were no electors residing within it. An election registering an affirmative vote was, therefore, impossible, and the court correctly held that the portion of District No. 16 within the panhandle became annexed to the plaintiff school district upon the adoption of the said resolution and the fulfillment of the necessary statutory requirements. We do not regard it as pertinent that at the time of the invalid election the district had had 1 elector, who had moved away by the time of the trial. No effort was made to establish his vote, or, in fact, whether or not he had voted, even if these facts were relevant, as to which we express no opinion. It is obviously idle and unwarranted to order a new election for nonexistent electors. The statute must have a reasonable construction.

In the view we have taken of the case it is unnecessary to consider the constitutional and other issues presented.

The judgment appealed from is affirmed.   No costs, a public question being involved.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.