*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF MARILYN I. NOTHNAGEL.

---

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Appellant,

v

JAMES R. MODRALL III,

Appellee.

UNPUBLISHED
October 10, 2024
3:31 PM

No. 367551
Benzie Probate Court
LC No. 21-000016-DE

---

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

The Department of Health and Human Services (DHHS) appeals as of right the probate court's order of allowance, providing that appellee's attorney fee claim in the amount of $22,876.20, be paid pursuant to MCL 700.5429(6), from the estate of decedent. We reverse and remand.

## I. FACTUAL BACKGROUND

Decedent, Marilyn I. Nothnagel, died on December 31, 2020. Before her death, decedent was under a conservatorship with her daughter, Patricia Rogers, serving as her conservator until January 2019. On January 15, 2019, Brenda Miller, a person employed by a fiduciary services agency, was appointed the successor conservator. For a period of time, decedent was deemed eligible for Medicaid benefits and services, and she resided for approximately two years at the Maples, a county-owned Medicare and Medicaid skilled nursing facility located in Frankfort, Michigan. However, in July 2018, the DHHS terminated her residency, determining decedent was no longer eligible for benefits for "failing to provide verifications." Decedent subsequently transferred to Frankfort Pines, an assisted living facility, located in Frankfort Michigan, at her own expense, where she presumably resided until her death.

-1-

In February 2021, Rogers filed an application for informal probate, requesting her appointment as personal representative of decedent's estate pursuant to decedent's will. The probate court subsequently issued letters of authority recognizing Rogers as the personal representative of decedent's estate.

On February 18, 2021, the DHHS filed a statement and proof of claim concerning Medicaid services provided to decedent from May 2016 through June 2018, in the amount of $182,049.74. Six days earlier, appellee filed a statement and proof of claim asserting that he was owed $22,876.20 in legal fees for services rendered between December 2017 and January 2019, concerning Medicaid eligibility. The December 2015 legal agreement listed Rogers as the client on Nothnagel's behalf as her next friend and durable power of attorney at that time.

In June 2022, Rogers filed a petition to resign as personal representative and appoint Miller as the successor personal representative of decedent's estate, which the probate court approved. In January 2023, Miller filed a petition for complete estate settlement, detailing the schedule for payment of properly presented claims. Miller listed the DHHS as a third creditor to be compensated in the amount of $181,910.35, and listed appellee as the fourth and final creditor to be compensated in the amount of $0 due to insufficient assets.

Appellee filed an objection to the petition for complete estate settlement contending that the proposed payment distribution was improper because his legal services claim was of a higher priority than the DHHS's claim under MCL 700.5429. The DHHS responded that MCL 700.3805, the proper statute governing the priority of claims for decedents' estates, provided that appellee's predeath legal services claim was of a lower priority than the DHHS's federally mandated claim under the Michigan Medicaid Estate Recovery Program (MMERP), MCL 400.112g *et seq*.

In May 2023, the probate court held a hearing on Miller's petition for complete estate settlement and appellee's objection. Miller testified that appellee was retained by Rogers, who was decedent's conservator at the time, to assist with determining decedent's Medicaid eligibility. Although decedent was entitled to Medicaid benefits for a period of time, the DHHS subsequently concluded decedent was no longer eligible for further Medicaid services.[1] As to appellee, Miller believed that he delayed seeking compensation for his legal services because "there was concern that [decedent's] funds would not outlast her[,]" after the DHHS denied her continued receipt of Medicaid services and benefits. The court determined it would take the matter under advisement and ordered further briefing from the parties regarding "the priority of claims to be paid from the estate."

The parties filed their briefs. The DHHS continued to argue that MCL 700.3805, not MCL 700.5429, controlled. Appellee argued that as a court of equity, the probate court should consider that he purposefully held back on pursuing collection of his bills for legal fees to ensure decedent would have sufficient funds for her care. Thus, it would be "unjust . . . to allow this act

---

[1] Miller testified that decedent was not entitled to continued benefits because of "unusual circumstances." The Medicaid redetermination was apparently closed for "failing to provide verifications" of stock and IRA withdrawals and receipts.

to go unrecognized upon the revelation of the windfall to the estate in the amount of $180,000.00." Had appellee's claim been made during decedent's lifetime, it would have had priority. Moreover, appellee's claim was payable under MCL 700.5429(6), the more specific statute, without imposing the order of priority reflected in MCL 700.3805.

In July 2023, the probate court held another hearing. After the parties argued, the probate court determined that, despite the priority provision detailed under MCL 700.3805, it would allow the compensation of appellee's claim under MCL 700.5429(6). The court reasoned:

> At the end of the day, the estate's not going to any family member of the decedent. Because the battle is it either all goes to the State of Michigan as reimbursement for Medicaid or it gets dived [sic] up, with the bulk still going to the State, but $22,000 and change going to [appellee] for his—attorney fees. In this matter, the Court views its role as one of equity. Ms. Brenda Miller testified that it appears that [appellee] essentially sat on his attorney fees out of concern for the protected individual as he did not wish to deplete all of her funds.

The probate court added that, when it viewed the underlying matter from an equity lens, appellee's conduct protected, in part, the DHHS's interest in recovering its funds from decedent's estate, and that the DHHS remained entitled to the majority of decedent's assets, even if appellee was compensated. The court later entered an order of allowance, providing that appellee's claim of $22,876.20 be paid from decedent's estate under MCL 700.5429(6) before the DHHS claim. The DHHS appealed.

## II. PRIORITY OF CLAIMS

The DHHS argues that the probate court erred when it entered its order of allowance providing that appellee's claim be paid pursuant to MCL 700.5429(6) because MCL 700.3805 governed the priority of claims related to the distribution of a decedent's estate and the DHHS's MMERP claim had higher priority under MCL 700.3805 than appellee's predeath legal services' claim. We agree.

The interpretation of a statute or court rule is a question of law that we review de novo. *Premiere Prop Servs, Inc* v *Crater*, 333 Mich App 623, 632 n 3; 963 NW2d 430 (2020). "An appeal of a decision of the probate court, however, is on the record; it is not reviewed de novo." *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011), citing MCL 600.866(1); MCR 5.802(B)(1). "This Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *Id*. An abuse of discretion occurs when a court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

The goal when interpreting a statute is to give effect to legislative intent by examining its plain language. *McNeil v Charlevoix Co*, 484 Mich 69, 75; 772 NW2d 18 (2009). "Where the language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *In re Petition of Attorney General for Investigative Subpoenas*, 282 Mich App 585, 591; 766 NW2d 675 (2009) (quotation marks and citation omitted). "[I]n determining

the Legislature's intent, statutory provisions must be read in the context of the whole statute and harmonized with the statute's other provisions." *Walt Disney Co v Eubanks*, 345 Mich App 213, 223; 4 NW3d 797 (2023) (quotation marks and citation omitted). "It is well established that different provisions of a statute that relate to the same subject matter are *in pari materia* and must be read together as one law." *TCF Nat'l Bank v Dep't of Treasury*, 330 Mich App 596, 609; 950 NW2d 469 (2019) (quotation marks and citation omitted).

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, "shall be liberally construed and applied to promote its underlying purposes," including "[t]o discover and make effective a decedent's intent in distribution of the decedent's property" and "[t]o promote a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's successors." MCL 700.1201(b) and (c). The provisions relevant to this case are within Article III, MCL 700.3101 *et seq.*, which governs probate of wills and estate administration, and Article V, MCL 700.5101 *et seq.*, which pertains to the protection of an individual under disability and their property.

In relevant part, MCL 700.5429 provides:

(1) A conservator may pay or secure from the estate a claim against the estate or against the protected individual arising before or during the conservatorship upon the presentation of the claim and allowance in accordance with the priorities in subsection (4)[2] . . . .

* * *

(3) A claimant whose claim has not been paid may petition the court for determination of the claim at any time before it is barred by the applicable statute of limitations and, upon due proof, may procure an order for the claim's allowance, payment, or security from the estate . . . .

---

[2] MCL 700.5429(4) provides:

If it appears that the estate in conservatorship is likely to be exhausted before all existing claims are paid, the conservator shall distribute the estate in money or in kind in payment of claims in the following order:

(a) Costs and expenses of administration.

(b) Claims of the federal or state government having priority under law.

(c) Claims incurred by the conservator for care, maintenance, and education that were previously provided to the protected individual or the protected individual's dependents.

(d) Claims arising before the conservatorship.

(e) All other claims.

* * *

(6) If a protected individual dies while under conservatorship, upon petition of the conservator and with or without notice, the court may hear a claim for burial expense or another claim as the court considers advisable. Upon hearing the claim, the court may enter an order allowing or disallowing the claim or a part of it and may provide in an order of allowance that the claim or a part of it shall be paid immediately if payment can be made without injury or serious inconvenience to the protected individual's estate.

Stated alternatively, MCL 700.5429 provides a procedure for a claimant to follow when seeking payment on a claim against a protected individual or against the estate. MCL 700.5429 is encompassed under Part 4 of Article V, titled, "Protection of Property of an Individual under Disability or of a Minor," with various subsections detailing the processes related to the creation and termination of conservatorships, duties of a conservator, and the proper method for handling transactions related to the protected person's estate.

MCL 700.3805 sets forth the priority of claim payments. In relevant part, MCL 700.3805 provides:

(1) If the applicable estate property is insufficient to pay all claims and allowances in full, the personal representative shall make payment in the following order of priority:

(a) Costs and expenses of administration.

(b) Reasonable funeral and burial expenses.

(c) Homestead allowance.

(d) Family allowance.

(e) Exempt property.

(f) Debts and taxes with priority under federal law, including, but not limited to, medical assistance payments that are subject to adjustment or recovery from an estate under section 1917 of the social security act, 42 USC 1396p.

(g) Reasonable and necessary medical and hospital expenses of the decedent's last illness, including a compensation of persons attending the decedent.

(h) Debts and taxes with priority under other laws of this state.

(i) All other claims.

(2) A preference shall not be given in the payment of a claim over another claim of the same class, and a claim due and payable is not entitled to a preference over a claim not due.

-5-

MCL 700.3805 is contained under Part 8 of Article III, governing creditors' claims, with numerous subsections addressing the appropriate means of dispensing claims arising before, at, or after the death of a decedent, the sufficiency of estate property to pay claims, and the settlement of claims. The DHHS's claim falls under MCL 700.3805(1)(f) because it relates to the MMERP. Appellee's claim falls under MCL 700.3805(1)(i) because it cannot be classified as an administration expense when his legal services were incurred while decedent was alive.[3]

The parties do not dispute the validity of their respective claims under the EPIC. Rather, the parties challenge whether MCL 700.5429(6) may essentially override the order of priority under MCL 700.3805, such that appellee's predeath legal fees were properly compensated before the DHHS's medical assistance payments. We conclude that the probate court erred when it entered its order of allowance providing that appellee's claim be paid pursuant to MCL 700.5429(6).

The plain language of MCL 700.5429 reflects that it pertains to claims against a protected person during his or her lifetime, as opposed to the appropriate means of distributing the estate of protected persons after their death. First, MCL 700.5429(1) provides, "A conservator may pay or secure from the estate a claim against the estate or against the protected individual arising *before or during the conservatorship* upon the presentation of the claim . . .[,]" (emphasis added), indicating the statute applies to claims against the protected person's estate while the conservatorship remained intact; however, a conservatorship naturally terminates upon the protected person's death.[4] Second, appellee failed to file a claim during the conservatorship of decedent. Instead, he filed the claim on February 11, 2021, during the administration of decedent's estate. Third, while MCL 700.5429(6) specifically provides for the court to consider another claim as it deems advisable upon petition of the conservator,[5] Miller did not expressly petition, verbally or in writing, for appellee's claim to take precedence over the DHHS's claim. Rather, during the May 16, 2023 hearing, Miller explained that the determination of which claim maintained the higher priority should be resolved by the probate court. Miller further expressed that she scheduled

---

[3] Under MCR 5.409(F), when an individual who is subject to a conservatorship dies, the conservator "must give written notification to the court within 14 days of individual's date of death" and "[i]f accounts are required to be filed with the court, a final account must be filed within 56 days of the date of death."

[4] See MCL 700.5431 ("The protected individual, conservator, or another interested person may petition the court to terminate the conservatorship. A protected individual seeking termination is entitled to the same rights and procedures as in an original proceeding for a protective order. Upon determining, after notice and hearing, that the minority or disability of the protected individual has ceased, the court shall terminate the conservatorship. Upon termination, title to the estate property passes to the formerly protected individual or to successors subject to the provision in the order for expenses of administration and to directions for the conservator to execute appropriate instruments to evidence the transfer.").

[5] "When a statute designates the person who may bring a claim, only the person[] so designated have the right to bring such an action." *In re Swope*, 190 Mich App 478, 480-481; 476 NW2d 459 (1991).

the priority of claims pursuant to MCL 700.3805 in her petition seeking a complete estate settlement. Miller recognized that, under the statute, the DHHS's MMERP claim was of a higher priority because it was a debt related to a federal law. And, although Miller did not object to petitioning for the compensation of appellee's legal fees under MCL 700.5429(6), if the probate court deemed such conduct was appropriate, she did not explicitly agree to it either. See *Hottmann v Hottmann*, 226 Mich App 171, 179; 572 NW2d 259 (1997) ("[T]he duty to interpret and apply the law has been allocated to the courts, not to the parties' expert witnesses.").

MCL 700.5429(6) additionally provides that, after the petition of a conservator, "the court may hear a claim for burial expense or another claim as the court considers advisable." "Advisable" is defined as "fit to be advised or done"; "advised" is defined as "thought out." *Merriam-Webster's Collegiate Dictionary* (11th ed). Appellee provided legal services to decedent's conservators, Rogers and Miller, regarding Medicaid eligibility greater than one year before decedent's death. However, appellee failed to collect fees until after the administration of decedent's estate; therefore, his claims are not the type contemplated in MCL 700.5429(6). While the term "advisable" certainly maintains a broad definition, it is unreasonable to conclude that one subsection, which is not encompassed under the proper article governing the administration of a decedent's estate, renders a statute dedicated to delineating the proper priority of claims against an estate, MCL 700.3805, meaningless. See *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016) (providing, "[W]hen determining [the Legislature's] intent we must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute") (quotation marks and citation omitted).

Even assuming, arguendo, that MCL 700.5429(6) was applicable to appellee's claim, we recognize that the aforementioned subsection does not address the priority of such "advisable" claims, but MCL 700.5429(4) does. See *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 367-368; 917 NW2d 603 (2018) (stating, "[W]e do not read statutory language in isolation and must construe its meaning in light of the context of its use"). MCL 700.5429(4) states:

> If it appears that the estate in conservatorship is likely to be exhausted before all existing claims are paid, the conservator shall distribute the estate in money or in kind in payment of claims in the following order:
>
> (a) Costs and expenses of administration.
>
> (b) Claims of the federal or state government having priority under law.
>
> (c) Claims incurred by the conservator for care, maintenance, and education that were previously provided to the protected individual or the protected individual's dependents.
>
> (d) Claims arising before the conservatorship.
>
> (e) All other claims.

Thus, under MCL 700.5429(4), the DHHS's claim, which falls under MCL 700.5429(b), would take priority over appellee's claim, which may be considered under MCL 700.5429(c) as a claim incurred by the conservator for the care of decedent, as appellee's legal services fundamentally pertained to decedent's Medicaid eligibility, or MCL 700.5429(e), under all other claims. Moreover, MCL 700.3805 contemplates the priority of reasonable funeral and burial expenses under MCL 700.3805(1)(b); comparatively, the priority provision under MCL 700.5429(4) does not, which may explain the exception delineated under MCL 700.5429(6) allowing the probate court to consider such expenses.

MCL 700.3805, however, expressly addresses circumstances when an estate, such as decedent's estate, maintains insufficient assets to pay all permissible claims, *after* a protected person's death, and it delineates the priority of claims. MCL 700.3805 additionally falls under Article III, which governs estate administrations. Appellee failed to present an adequate reason to overlook the priority provision under MCL 700.3805, and to require the probate court to use its equitable power to bypass the Legislature's clear intent and order payment of appellee's claim. Moreover, there is no prior caselaw, published or unpublished, addressing the applicability of MCL 700.5429 to the distribution of a decedent's estate, whereas MCL 700.3805 has been repeatedly cited to determine the priority of claims following a decedent's passing. See *In re DeCoste Estate*, 317 Mich App 339, 353-354; 894 NW2d 685 (2016) (citing MCL 700.3805(1) to advance, "appellants had the duty to settle and distribute the [decedent's] estate in accordance with EPIC, which requires payment of the costs and expenses of administration"); see also *In re Lundy Estate*, 291 Mich App at 356 (in examining the proper priority of the challenged claims against the decedent's estate noted, "MCL 700.3805 sets forth the priority of claim payments").

While appellee advanced that, as a court of equity, the probate court was permitted to consider the circumstances surrounding his delay in seeking compensation for his legal services, equitable courts are not exempt from following the plain language of a statute. See *Gleason v Kincaid*, 323 Mich App 308, 318; 917 NW2d 685 (2018) (stating, "[W]hen a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere") (quotation marks and citation omitted); see also *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 406-407; 738 NW2d 664 (2007) (opining, "[I]f courts are free to cast aside a plain statute in the name of equity, even in such a tragic case as this, then immeasurable damage will be caused to the separation of powers mandated by our Constitution"). Thus, appellee's conduct, while admirable, remains subject to the priority provision delineated under MCL 700.3805. The DHHS maintained a valid MMERP claim, and pursuant to MCL 700.3805, its claim was of a higher priority than appellee's claim when determining the appropriate distribution of decedent's estate. Accordingly, the probate court erred by applying MCL 700.5429(6) to the instant matter, and ordering appellee's claim to be paid before the DHHS's higher priority MMERP claim pursuant to MCL 700.3805.

Reversed and remanded to the probate court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica